IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA         :
                                 :
V.                               :       Civil No. WMN-05-1297
                                 :
JOHN BAPTIST KOTMAIR <u>et al.</u>       :

MEMORANDUM

Before the Court are cross motions for summary judgment filed by Defendant Kotmair, Paper No. 36; by Defendant Save-a-Patriot Fellowship (SAPF), Paper No. 38; and by the government. Paper No. 42.[1]  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary and that Defendants' motions for summary judgment will be denied, and the government's motion for summary judgment will be granted.

I. BACKGROUND

Defendant John B. Kotmair is a seasoned tax protester who has long espoused what has come to be known as the "Section 861" or "U.S. Sources" argument.  By adopting a twisted reading of selected portions of Internal Revenue Code (IRC), proponents of this argument assert, in simplest terms, that U.S. citizens need not pay any taxes on income earned within the 50 states.[2]  In 1984, 31 days after being released from a two-year term of

_____

[1] In addition, there are several discovery-related or procedural motions pending.  Paper Nos. 34, 35, 39, 64.

[2] See <u>United States v. Bell</u>, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003), for a more detailed explanation of the Section 861 argument.

imprisonment for failure to file income tax returns,[3] Kotmair founded Defendant Save-a-Patriot Fellowship (SAPF).  Kotmair describes himself as the "Fiduciary of [SAPF's] day-to-day functions."  Kotmair Aff. ¶ 3.

Kotmair represents that SAPF operates on the basis of membership fees and "donations."  See id. ¶ 8.  In addition, through its website, www.save-a-patriot.org, and other publications, SAPF informs its members of various products and services that it offers for sale.  SAPF represents that these products and services, if used as SAPF instructs, will enable members to legally stop paying income tax on their "U.S.-source income."  For example, SAPF sells to its members a document called an "Affidavit of Revocation and Rescission" which Defendants claim can be used to revoke the members' original applications for Social Security numbers.  Id. ¶ 7.  As a result of this "revocation," according to Defendants, the individual is no longer obligated to file income tax returns or to have taxes or Social Security contributions withheld from his or her earnings.  SAPF also provides upon payment of an established fee a "Statement of Citizenship" which members are instructed to give their employers to persuade those employers to stop withholding taxes from the SAPF member's wages.

SAPF members' assertion of these arguments and positions is met with a predictable response from the Internal Revenue Service

---

[3] See Kotmair v. Commissioner of Internal Revenue, 86 T.C. 1253 (1986).

(IRS).  When the IRS sends notices to SAPF members exposing the
frivolousness of the "U.S.-Sources" argument and requesting that
they file properly completed income tax returns, SAPF (upon
payment by its members of additional fees) submits to the IRS on
behalf of its members a number of different formletter responses.
See id. ¶¶ 24-28, 30, 32 (in responding to Revenue Agent Rowe's
descriptions of the various letters SAPF has submitted to the
IRS, Kotmair, without denying SAPF sends the letters, simply
affirms that "[t]he documents in question contain true statements
from the law").  These letters are generally signed by Kotmair as
the "power-of-attorney" for the SAPF member.  See Pl.'s Ex. 9
(redacted protest letter with attached power-of-attorney);
Kotmair Aff. ¶ 33 (acknowledging that power-of-attorney documents
are executed when members request that SAPF staff respond to the
IRS on their behalf).  In addition to these numerous formletters,
SAPF offers to prepare and file customized pleadings for its
members advancing the U.S.-Sources argument, again, in exchange
for the payment of additional fees.  See Pl.'s Ex. 1A/1B, Save-A-
Patriot Fellowship Member Handbook 17 (hereinafter "Handbook")
(explaining that SAPF's "[p]aralegal work (court
complaints/briefs, motions etc.) is considerably more cost
intensive than power-of attorney work (case development including
correspondence to the IRS)" and can be as much as ten times more
expensive).

In its Complaint, the government also alleges that SAPF
offers an "insurance-like" program that furnishes a financial

3

incentive for its members to violate federal tax law.  <u>See</u> Compl.
¶¶ 11-15.  SAPF's "Member Handbook" explains that "[t]he
Fellowship operates much like an insurance company in that
members pledge under our Member Assistance Program (MAP) to
reimburse other members should they suffer a loss of cash or
property as a result of illegal IRS collection practices and
confiscation."  Handbook 4.  Elsewhere, the Handbook outlines the
losses covered under this program, either from criminal
prosecutions or civil actions initiated by the IRS, and
emphasizes that, to obtain these benefits, the "Member must prove
they used every Court proceeding and delay tactic possible."  <u>Id.</u>
at 28.[4]

The government asserts that Defendants' activities are
violative of IRC §§ 6700 and 6701 and filed this action pursuant
to IRC § 7408 to obtain a permanent injunction prohibiting
Defendants from continuing these activities.  In addition, the
government is asking that the Court order Defendants pursuant to
IRC § 7402: to furnish it with the identities of its members and
those who have purchased its products and services and to notify
those customers of the Court's ruling in this matter; to remove
the false and fraudulent information from its website; and to

---

[4] In its motion for summary judgment, SAPF argues
strenuously that "[i]t is beyond reason and logic that [these
insurance-like programs] could be construed to encourage anyone
to commit a crime."  Defs.' Mot. for Summ. J. 33.  In its
Handbook, however, SAPF compares the program to winning the
lottery, except, "unlike the lottery, [the convicted SAPF member]
won't have to wait 20 years."  Handbook 6.  SAPF opines that
because of this financial windfall, "[s]ome members may even wish
for multiple sentences."  <u>Id.</u>

post a copy of this Court's injunction on that website.

The government has filed a motion for summary judgment arguing that the undisputed evidence establishes that Defendants are violating the IRC and will not stop that illegal activity unless enjoined by this Court.  Defendant SAPF has filed an opposition and cross motion, challenging the evidence offered by the government, both as to its adequacy and its admissibility. Defendant SAPF also argues that its activities are protected by the First Amendment.  Defendant Kotmair filed a separate motion arguing that he in not a proper party in this action.

## II. SUMMARY JUDGMENT MOTIONS

### A. Legal Standard for Summary Judgment

A moving party is entitled to summary judgment only upon showing that there exists no genuine issue as to any material fact, and it is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Blue Ridge Ins. Co. v. Puig, 64 F. Supp. 2d 514 (D. Md. 1999) (citing, inter alia, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"Where . . . both parties have moved for summary judgment, it does not establish that there is no issue of fact and require that summary judgment be granted to one side or another." World-Wide Rights Ltd. P'ship v. Combe, Inc., 955 F.2d 242, 244 (4th Cir. 1992) (citation and internal quotation marks omitted).  When both parties file motions for summary judgment, the court applies the same standards of review.  Taft Broadcasting Co. v. United

States, 929 F.2d 240, 248 (6th Cir. 1991); ITCO Corp. v. Michelin

Tire Corp., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is

not permitted to resolve genuine issues of material facts on a

motion for summary judgment--even where . . . both parties have

filed cross motions for summary judgment.") (emphasis omitted).

The role of the court is to "rule on each party's motion on an

individual and separate basis, determining, in each case, whether

a judgment may be entered in accordance with the Rule 56

standard." Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co., 627

F. Supp. 170, 172 (D. Md. 1985) (quoting Wright, Miller & Kane,

Federal Practice and Procedure: Civil 2d § 2720).

     B. Entitlement to Injunction

     As a preliminary matter, the Court must briefly address two

arguments made by Defendants related to the adequacy of the

allegations in the Complaint.  On the one hand, Defendants assert

that the Complaint is overbroad and that some of the allegations

in the Complaint relate to activities over which Defendants have

no control or which have no relevance to the government's claims.

For example, the Complaint references representation made on two

websites which are not owned or operated by Defendants.  See

Compl. ¶¶ 8, 23, 24 (referencing websites "www.taxfreedom101.com"

and "www.taxtruth4u.com" and representations made on those

websites).  The government now concedes that Defendants do not

control these websites.  Obviously, therefore, any injunction

issued by this Court cannot require any action by Defendants

relative to those websites.  The Complaint also contains
allegations concerning "frivolous" Freedom of Information Act
(FOIA) requests and bankruptcy petitions that SAPF has filed on
behalf of its members.  Id. ¶ 23, 24.  It is questionable whether
any injunction issued under §§ 7402 or 7408 would reach that
conduct.

On the other hand, Defendants protest that allegations
necessary to support the government's claims were omitted from
the Complaint, but evidence supporting those omitted allegations
was submitted with the government's motion.  For example,
Defendants note that the "Statement of Citizenship" was never
mentioned in the Complaint.  SAPF's Opp. to P.'s Mot. for Summ.
J. 19.  They acknowledge elsewhere, however, that the Complaint
does state that "defendants prepare documents for members that
they claim will prevent the member's employer from withholding
federal taxes from the member's wages," and that this allegation,
"[c]onstrued as liberally as possible, . . . may be an allusion
to the 'Statement of Citizenship.'"  Id. 20-21.  With these
quibbling criticisms of the Complaint, Defendants are placing a
pleading burden on the government far beyond the liberal pleading
standards of Rule 8 of the Federal Rules of Civil Procedure, or
even the more stringent standards of Rule 9.

Turning to the merits of the government's claims, it is
abundantly clear from the record that Defendants' conduct is in
violation of both §§ 6700 and 6701 of the IRC, and that
injunctive relief is appropriate and necessary under both § 7408

and § 7402.

Section 7408(a) of the IRC provides that the United States may commence an action in a district court to enjoin any person from engaging in conduct subject to penalty under §§ 6700 and 6701.  A district court has authority to grant such relief, if it finds:

> (1) that the person has engaged in any conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.) or section 6701 (relating to penalties for aiding and abetting understatement of tax liability), and

> (2) that injunctive relief is appropriate to prevent recurrence of such conduct[.]

IRC § 7408(b).  Since § 7408 expressly provides for an injunction, the traditional guidelines for equitable relief do not have to be established for an injunction to issue.  United States v. Buttorff, 761 F.2d 1056, 1059 (5th Cir. 1985) ("When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose.").  The government bears the burden, however, of proving each element necessary for the issuance of an injunction by a preponderance of the evidence.  United States v. Estate Preservation Servs., 202 F.3d 1093, 1098 (9th Cir. 2000).  To prove a violation of § 6700 that would then warrant the issuance of an injunction under § 7408, the government must show that:

> (1) the defendants organized or sold, or participated in the organization or sale of,

8

an entity, plan, or arrangement;

    (2) they made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement;

    (3) they knew or had reason to know that the statements were false or fraudulent;

    (4) the false or fraudulent statements pertained to a material matter; and

    (5) an injunction is necessary to prevent recurrence of this conduct.

<u>Estate Preservation</u>, 202 F.3d at 1098.[5]

Defendants' primary argument that they are not in violation

---

[5] Section 6700 makes subject to its penalties:

[a]ny person who--
  (1)(A) organizes (or assists in the organization of)--

   (i) a partnership or other entity,

   (ii) any investment plan or arrangement, or

   (iii) any other plan or arrangement, or

   (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)--

   (A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

   (B) a gross valuation overstatement as to any material matter.

of § 6700 is that its provisions were "never intended to apply to
false statements generally, nor even to all false statements with
respect to the allowability of any deduction or credit, or the
excludability of any income."  Defs' Mot. for Summ. J. 18.
Instead, Defendants contend, "[i]t only applies to false
statements with respect to the availability of any of these tax
benefits by reason of participation in the shelter."  Id.
(emphasis in original).  Because, under Defendants'
interpretation of the tax laws, no income tax can be properly
assessed against anyone for U.S.-source income, no exclusive tax
benefit is promised to SAPF members by virtue of their membership
or participation in SAPF.  See id. 19.

     Courts have universally rejected Defendants' narrow reading
of § 6700 and have found tax schemes very similar to Defendants'
to fall within the reach of that statute.  For example, in United
States v. Raymond, 228 F.3d 804 (7th Cir. 2000), the defendants
promoted the view that the federal income tax is unconstitutional
and that persons who are not federal employees or residents of
the District of Columbia are not legally required to pay federal
income tax.   Like Defendants in the case at bar, the Raymond
defendants made available for sale forms and instructions to
guide individuals through the process of "withdrawing" from the
jurisdiction of the federal government's taxing authorities and
the social security system so that the individual would, under
the defendants' view of the Tax Code, no longer be required to
pay federal taxes.  228 F.3d at 806.  In concluding that the

10

defendants' activities were in violation of § 6700, the Seventh Circuit held that "the definition of a tax shelter in § 6700 is 'clearly broad enough to include a tax protester group.'"  Id. at 811 (quoting United States v. Kaun, 827 F.2d 1144, 1148 (7th Cir. 1987)).  See also United States v. Cohen, Civ. No. 04-332, 2005 WL 1491978, *4 (W.D. Wash. 2005) (stating that "a defendant need not be operating a traditional investment tax shelter to run afoul of § 6700, but that the organization or participation in a tax protester scheme or group, which is based on false or fraudulent conceptions of the U.S. Tax Code, will suffice"); Abdo v. United States, 234 F. Supp. 2d 553, 562 (M.D.N.C. 2002) (noting that "the Senate Finance Committee's Report concerning the statute confirms that Congress designed Section 6700 as a 'penalty provision specifically directed towards promoters of abusive tax shelters and other abusive tax avoidance schemes'")(quoting S. Rep. No. 97-494, 97th Cong., 2d Sess. 266, reprinted in 1982 U.S.C.C.A.N. 781, 1014) (emphasis added in Abdo).

Defendants provide no authority to the contrary and, in fact, readily concede that "courts have included all sorts of abusive tax reduction schemes within [§ 6700's] broad sweep." SAPF's Opp. to Pl.'s Mot. for Summ. J. 28.  In Defendants' view, however, "just because courts have followed that course of conduct does not make it valid."  Id. 28 n. 67.  While Defendants stubbornly choose to ignore the reasoning of numerous courts, this Court finds that reasoning compelling.  Section 6700

11

mandates penalties on any person who "organizes . . . (ii) any investment plan or arrangement, or (iii) any other plan or arrangement," and furnishes a statement known to be false with respect to the excludability of income by reason of participating in the plan or arrangement.   IRC § 6700((a)(1)(A) (emphasis added).   While Defendants may argue that the tax benefits it promotes are potentially available to any American citizen, implicit in SAPF's sale of its forms, letters, and "paralegal" services is the representation that only those that follow SAPF's plan will be able to reap those benefits.   SAPF certainly touts the advantages to its members of employing SAPF's services.   See, e.g., Handbook 21 ("But of course, whether or not [the legal restrictions by which SAPF asserts the IRS is bound] prevent the IRS from hurting someone depends entirely upon whether or not the individual in question makes the proper response, protests and/or requests that are necessary to obtain relief. . . .   When we represent you, that is exactly what we do."); see also id. 16 (emphasizing that "all response letters to the IRS or affidavits (revocation and rescission, constructive notice, indemnity, etc.) are exclusive to the membership").

As to the next three elements of a § 7600 violation, it is equally clear that Defendants' statements about the legality of their efforts on members' behalf were false, pertained to material matters, and that Defendants knew, or had reason to know, they were false.   To encourage individuals to join its "Fellowship," and make use of its products and services, SAPF

represented, <u>inter alia</u>: that taxable income is limited to "income that has been 'earned' while living and working in certain 'foreign' countries or in the U.S. possessions and territories;" that there is no requirement for most Americans to file tax returns or have taxes withheld from their wages; and that one can "quit" the Social Security program.  Handbook 10-11. As noted above, Defendants readily acknowledge that courts have consistently rejected the truth of each of these propositions. As a self-professed tax expert and one who has studied "the relevant court cases and the law," Handbook 16, Defendant Kotmair has long been well aware of those holdings.  Again, Defendants do not deny that courts have interpreted the Internal Revenue Code in a manner that is diametrically opposed to their own, they simply choose to reject and ignore those holdings.  <u>See</u> SAPF Opp. to P.'s Mot. for Summ. J. 33 ("The problem with [the government's] legal theory is that it attempts to equate knowing that a statement is false with knowing that courts have said that it is false.").[6]

---

[6] In addition to these falsehoods about the tax laws, Defendants also misrepresent Kotmair's authority to represent others before the IRS.  Although Kotmair continues to obtain "power-of-attorney" documents from SAPF customers and files papers with the IRS on others' behalf, he admits that has received notice from the IRS on several occasions, as early as 1993, that his representation number has been revoked and that he is no longer eligible to practice before the Internal Revenue Service.  Kotmair Aff. ¶¶ 34-37.  While he acknowledges that he has been told that he cannot continue to represent others, he denies the effect of the revocation on "due process" grounds. <u>Id.</u> ¶ 35-37.  This is yet another example of Defendants simply insisting that the law is what they say it is, regardless of compelling authority to the contrary.

The legislative history of § 7600 indicates that the "knows or has reason to know" standard "includes what a reasonable person in the [defendant's] . . . subjective position would have discovered." Estate Preservation Services, 202 F.3d at 1103. This standard "allow[s] imputation of knowledge so long as it is commensurate with the level of comprehension required by the speaker's role in the transaction." Id. (citations and internal quotations omitted). Here, Defendants unquestionably meet that standard.

The final element to be considered before an injunction can issue under §§ 6700 and 7800 is whether an injunction is necessary to prevent recurrence of the offending conduct. In making that determination, courts consider such factors as: "the gravity of harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transactions; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations." Kaun, 827 F.2d at 1149-1150. Each of these factors favor the issuance of an injunction.

Defendants boast that their operation "has grown into a complex containing a print shop, copy room, paralegal room, casework area, advanced 30 gigabyte video production studio, book shop, 150 person meeting room with stage, sound and video cameras and a complete law library, both on disk, hard copy and computer

14

access to West Law," and speak of SAPF's enrollment as
"exploding" with a goal of 100,000 members.  Handbook 16, 6.
Although Defendants challenge the government's estimate as to
exactly how much it costs the IRS to respond to Defendants'
frivolous filings, they do not dispute the governments'
representation that Defendants have mailed over 800 protest
letters to the IRS just during the course of this litigation.
Decl. of Joan Rowe ¶ 41.  Apart from the costs of dealing with
these protest letters is the matter of unpaid or underpaid income
taxes by SAPF adherents.  Finally, Defendants have shown no
inclination, whatsoever, to cease their activities despite their
position being repeatedly rebuffed by the courts.

        To establish a violation of § 6701 warranting an injunction
under § 7408, the government must prove: (1) the defendant
prepares, assists in, procures, or advises the preparation of any
portion of a return, affidavit, claim, or other document; (2) the
defendant knows (or has reason to believe) that such portion will
be used in connection with any material matter arising under the
internal revenue laws; (3) the defendant knows that such portion
(if so used) would result in an understatement of the liability
for tax of another person; and (4) an injunction is necessary to
prevent a recurrence of this conduct.  IRC §§ 6701, 7408.

        Defendants readily concede that SAPF prepares correspondence
for its members that it knows will be used (and in fact, has been
used) in connection with matters material to the internal revenue
laws.  SAPF's Mot. for Summ. J. 22.  In what is perhaps

15

Defendants' second most preposterous argument in their pleadings, SAPF argues that its filings on its members' behalf do not result in understatements of liability.  Defendants "reason" that to result in an understatement of liability, "a presentation containing actual numbers must be made with respect to statements of liability."  Id. at 24.  Because SAPF's correspondence on behalf of its members "contains no amounts, but employs mere words - citations of the law, citations of court cases, and declarations of beliefs," SAPF contends that "it is absurd" to consider that its services run afoul of § 6701.  Id. 24-25.

It is, of course, Defendants' argument that is absurd.  The whole thrust of Defendants' U.S.-sources scheme is that individuals whose income would otherwise be taxable can escape their tax liabilty completely.  Whether Defendants' customers achieve this result by filing a return indicating zero income and zero liability, or simply refuse to file a return, the result is the same - their tax liability is understated.  To argue otherwise is mere sophistry.

Defendants' most preposterous argument, however, is that, because "the evidence is overwhelming that the IRS never relies upon letters written by Defendant," those letters cannot result in an understatement of liability for tax.  SAPF's Mot. for Summ. J. 25.[7]   Requiring the IRS to adopt or embrace a defendant's

_____

[7] SAPF elaborates, "[i]t is the sad experience of Defendant that, in its 22 years of existence, letters Defendant sends to the IRS are not responded to substantively, much less considered in determining members' correct tax situation."  Id. 25-26.

fraudulent position before that defendant could be found in violation of § 6701, however, turns the statute on its head.  The statute penalizes the understatement of liability and SAPF assists its customers making those understatements.  There is no additional requirement under the statute that an individual ultimately prevail in avoiding his or her rightful liability. Were that a requirement, no one could ever be penalized under the statute.

The Court concludes that the government is entitled to an injunction under § 7408 as it is necessary to prevent ongoing violations of both § 6700 and 6701.

The Court also concludes that the government is entitled to an injunction under § 7402.  Section 7402 of the IRC can provide an additional or alternative basis for a district court to issue "writs and orders of injunction . . . and such other orders and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."  IRC § 7402(a).  Injunctive relief under § 7402 is "in addition to and not exclusive of any and all other remedies."  Id.  This section has been employed "to enjoin interference with tax enforcement even when such interference does not violate any particular tax statute."  United States v. Ernst & Whinney, 735 F.2d 1296, 1300 (11th Cir. 1984).  Courts have held that "the language of § 7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws," and "the statute has been relied upon to enjoin activities of third parties that encourage taxpayers to make fraudulent

claims." Id.  The specific relief that the government seeks under § 7402 is an order requiring Defendants: (1) to furnish the government with the identities of those persons who have purchased Defendants' tax materials and to notify those customers of the Court's ruling in this matter; (2) to remove false and fraudulent tax promotional materials from their websites; and (3) to post a copy of this Court's injunction on SAPF's website.

Unlike an injunction under § 7408, before an injunction can issue under § 7402, the government must establish the presence of the traditional equitable factors for the issuance of an injunction.  Id. at 301.  "Those factors are: (1) the likelihood of continuing irreparable injury to the United States, (2) the harm to the defendant, (3) success on the merits of the case, and (4) the public interest." United States v. Hansen, Civ. No. 05-0921, 2006 WL 2354820 (S.D. Cal. June 1, 2006).  Here, those factors are easily met.

As noted above, the government is sustaining irreparable harm in the form of the expenditures of time and money to respond to Defendants' frivolous filings as well as the lost revenue from SAPF customers who either fail to file returns or file returns understating their tax liability.  In contrast, Defendants will not sustain any irreparable harm by being required to obey the law.  Hansen, 2006 WL 2354820 at *9; United States v. Lloyd, Civ. No. 04-274, 2005 WL 3307281 at *8 (M.D.N.C. Dec. 6, 2005). As to the merits of the government's case, it is without question that Defendants are violating the tax laws and interfering with

18

the administration of those laws.  Finally, the public has a
compelling interest in prohibiting the promotion and sale of
products that aid some in avoiding lawful income taxes.

### C. Scope of Injunction

In considering the scope of the injunctive relief to be
granted, the Court must consider various constitutional
challenges raised by Defendants.  As with Defendants' other
arguments and defenses, each of these challenges have been
rejected by courts that have issued or affirmed injunctions
against other tax protesters similar to that requested here.

### 1. Enjoined Commercial Speech

Defendants contend that the statements on SAPF's website and
in its other publications constitute speech protected by the
First Amendment and, therefore, cannot be enjoined.  Because much
of the speech, however, relates to the sale of SAPF products and
services, it is commercial speech and it is well established that
commercial speech, if fraudulent, can be enjoined.  Schiff, 379
F.3d at 630; Estate Preservation, 202 F.3d at 1106.  Because
Defendants' representations about the tax laws and the efficacy
of their products is clearly fraudulent, that speech can be
enjoined without running afoul of the First Amendment.  See
Estate Preservation, 202 F.3d at 1106 (collecting cases enjoining
similar conduct).

Just last year, the Third Circuit affirmed the issuance of
an injunction against one of Kotmair's former employees, Thurston
Bell, who owned and operated a rival website promoting the U.S.-

19

Sources argument.  United States v. Bell, 414 F.3d 474 (3rd Cir.
2005).  Because, like Defendants in the instant action, Bell used
his website to entice the reader to pay to join his organization
and to purchase advice and other products, the district court
found that Bell was engaging in commercial speech.  United States
v. Bell, 238 F. Supp. 2d 696, 703 (M.D. Pa. 2005).  The district
court concluded that this commercial speech could be lawfully
enjoined.  To the extent that there was non-commercial content on
the website, the district court held that this content could be
banned "where such advocacy is directed to inciting or producing
imminent lawless action and is likely to incite or produce such
action."  Id. at 704 (emphasis in original) (quoting Brandenburg
v. Ohio, 395 U.S. 444, 447 (1969)).

While affirming the issuance of the injunction, the Third
Circuit slightly modified its language.  Noting that Brandenburg
might be "the wrong tool for tailoring the injunction," Bell, 414
F.3d at 483,[8] the court concluded that the injunction would avoid
raising constitutional questions "if it were written to ban false
commercial speech and aiding and abetting violations of the tax
laws rather than Brandenburg's incitement."  Id. at 484 (emphasis
added).  The court then held that the language of the injunction
would be construed so that "Bell may only be found in contempt
for violating the order where the evidence demonstrates that he

---

[8] The Third Circuit acknowledged that there was a
disagreement among the courts as to the forms of expression that
can be protected under Brandenburg, and also noted that it was
questionable whether Bell's website met Brandenburg's "imminence"
requirement.  414 F.3d at 482 n.8, 483 n.9.

advertised, marketed or sold false tax advice, or aided and abetted others, directly or indirectly, to violate tax laws." Id.  This Court will adopt similar language.[9]

### 2. Provision of Customer Lists

The government has requested that the Court order Defendants to produce to the government the name, social security number, and contact information for all SAPF members and those that have purchased Defendants' products and services.  Although the government knows the identity of many of these individuals, it argues that this information is needed because of the possibility that many do not file tax returns.  The Court concludes that the production of the customer lists is an appropriate means to alleviate some of the harm caused by Defendants' conduct and to mitigate further harm.  See Hansen, 2006 WL 2354820 at *10 (ordering the plaintiff to disclose the "identities of any individuals who have purchased [d]efendant's abusive tax programs, and to notify those customers of [the c]ourt's ruling'); United States v. Hill, Civ. No. 05-877, 2005 WL 3536118

---

[9] The Court is cognizant that there may be portions of the website and other materials that neither constitute false commercial speech nor aid and abet others to violate the tax laws.  Under the injunction, Defendants can express their opinions about the tax laws as long as those opinions are not used to sell products or services or instruct others as to how to impede the collection of taxes.  See Schiff, 379 F.3d at 629 (noting that under the injunction issued, "Schiff can relate his long history with the IRS and explain his unorthodox tax theories without simultaneously urging his readers to buy his products"); United States v. Bell, 414 F.3d at 480 (observing that "an appropriately drafted injunction in this case would curtail Bell's promotion of tax evasion but would not prevent him from advocating against the tax laws generally").

(D. Ariz. Dec. 22, 2005) (ordering the defendants to disclose
names of all those for whom defendants filed returns).

### 3. Posting Injunction on Website and Customer Notification

Finally, the government requests the Court to order
Defendants to post a copy of the permanent injunction on the
first page of its website, and to maintain that website, with the
posted injunction, for one year.  The government would also have
Defendants notify, at their expense, all SAPF members and all
individuals who have purchased Defendants' products and services
of the issuance of the permanent injunction and to provide them
with a copy of the injunction.  Although this would constitute
"forced speech," courts have held that "mandated disclosure of
factual commercial information does not offend the First
Amendment.  Schiff, 379 F.3d at 631.  In equating the sale of
fraudulent tax scheme with the sale of a defective product, the
Ninth Circuit observed, "[b]ecause the defendants are selling a
product that, if used, could expose their customers to criminal
liability for tax evasion, the government does not offend the
First Amendment when it requires the defendants to post a
preliminary injunction on the websites where the product is sold,
warning potential customers of the hazards of the product."  Id.

### B. Estoppel of Claims against Kotmair

Defendant Kotmair has filed a separate motion arguing that
Plaintiff is estopped from seeking an injunction against him
based upon a finding of this Court in a prior action against
these same parties, Save-A-Patriot Fellowship v. United States,

962 F. Supp. 695 (D. Md. 1996).  In the instant complaint, Kotmair is identified in the introduction and in paragraph 4 as "doing business as Save-A-Patriot Fellowship and National Workers Rights Committee."  Kotmair contends that this identification is inconsistent with this Court's conclusion in that previous decision that SAPF "is an unincorporated association (not just an alter ego or sole proprietorship of Kotmair), has members, and does things through persons in addition to Kotmair."  <u>Save-A-Patriot Fellowship</u>, 962 F. Supp. at 699.  Because of that inconsistency, Kotmair contends in his motion for summary judgment that he is not a proper party in this suit.

The Court agrees that identifying Kotmair as "doing business as SAPF" was perhaps unartful.  It does not, however, mandate dismissal of Kotmair.  In fact, Kotmair's reference to the previous decision of this Court highlights the need to enjoin his activities in addition to those of SAPF.  The Court will enjoin Kotmairs' actions as well as those of SAPF.

**III. OTHER PENDING MOTIONS**

Also pending are a variety of discovery related motions. While these motions are largely mooted by the Court's resolution of the summary judgment motions, they warrant a brief discussion.

On May 16, 2006, Magistrate Judge James Bredar issued a ruling on a motion to compel filed by the government.  In that ruling, Judge Bredar ordered Defendants, <u>inter alia</u>, to turn over to the government SAPF's customer lists.  Defendants filed an objection to this ruling, Paper No. 34, raising some of the same

arguments raised in their briefing of the summary judgment
motions.  Defendants also filed a motion to stay enforcement of
Judge Bredar's order pending resolution of their objection.
Paper No. 35.  In response to Defendants' specific failure to
comply with Judge Bredar's order and more general failure to
cooperate in discovery, the Government filed a motion for
sanctions requesting that certain facts be deemed admitted by
Defendants.  Paper No. 39.  Finally, Defendants filed a motion to
strike certain evidence submitted by the government with its
summary judgment reply memorandum on the ground that the
government should have submitted this evidence with its summary
judgment motion.  Paper No. 64.  This motion is related to other
discovery motions in that the government, in opposing the motion
to strike, asserts that Defendants' failure to cooperate in
discovery and produce these documents is part of the reason the
evidence was not submitted previously.

     The Court will overrule Defendants' objections to Judge
Bredar's May 16, 2006, order and will deny the remaining motions
as moot.  The undersigned finds no error in Judge Bredar's
ruling.  Regardless, most if not all of the discovery he ordered
Defendants to produce must now be produced pursuant to the
permanent injunction issued with this memorandum.  As to the
government's motion for sanctions, the Court has now found as
fact those elements that the government sought to be deemed
admitted.  Finally, the Court agrees that had Defendants
cooperated in the discovery process, the government would have

been able to submit with its motion for summary judgment much of
the material is submitted with its reply.  In addition, because
the evidence against Defendants is so overwhelming, with much of
it coming from Defendants' own documents and testimony, the
additional evidence submitted with the reply does little more
than gild the lily.

## IV. CONCLUSION

For these reasons, the Court finds that the government is
entitled to summary judgment.  Two separate orders will issue
with this memorandum, one summarizing the resolution of the
pending motions, and the other, an Order of Permanent Injunction,
setting forth the actions to be taken by Defendants and the
conduct to be restricted.

_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: November 29, 2006